UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Wentworth-Douglass Hospital,
    Plaintiff

    v.                              Case No. 10-cv-120-SM
                                        Opinion No. 2011 DNH 020
Young & Novis Professional
Association d/b/a Piscataqua
Pathology Associates; Cheryl
C. Moore, M.D.; and Glenn H.
Littell, M.D.,
    Defendants


**O R D E R**

    Wentworth-Douglass Hospital ("WDH" or "the hospital")
brought suit against several physicians, individually, as well as
their professional association, under the Computer Fraud and
Abuse Act and New Hampshire common law. Defendants, in turn,
have asserted counterclaims for invasion of privacy (false light)
and defamation. Defendant Moore says the hospital portrayed her
in a false light by publically stating that the College of
American Pathologists placed the hospital's pathology laboratory
on probation because she, as Laboratory Director, failed to
provide proper oversight. All three defendants claim the
hospital defamed them when, in a public statement, its
spokeswoman characterized electronic data, that Moore and Littell
had possession of and later returned to the hospital, as having
been "stolen" from the hospital. Before the court is the

hospital's motion to dismiss, or in the alternative, for summary judgment on, defendants' counterclaims.  Defendants object.  For the reasons given, hospital's motion to dismiss is denied.


### The Legal Standard

The hospital moves to dismiss both of defendants' counterclaims.  But, it attaches numerous exhibits to its motion, inviting the court to treat the motion as one for summary judgment, should the court determine that the attached documents are not incorporated by reference into defendants' counterclaims.  Defendants object to treating plaintiff's motion as one for summary judgment, pointing out that discovery is still ongoing.  Because, in this district, "[f]ilers shall not combine multiple motions seeking separate and distinct relief into a single filing," LR 7.1(a)(2), and because defendants have not had a reasonable opportunity to respond to a motion for summary judgment, <u>see</u> Fed. R. Civ. P. 12(d), the court will treat plaintiff's motion as a motion to dismiss, and will consider only those exhibits appropriate to that procedural context.


A motion to dismiss for "failure to state a claim upon which relief can be granted," Fed. R. Civ. P. 12(b)(6), requires the court to conduct a limited inquiry, focusing not on "whether a plaintiff will ultimately prevail but whether the claimant is

entitled to offer evidence to support the claims." <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974).  That is, the complaint "must contain 'enough facts to raise a reasonable expectation that discovery will reveal evidence' supporting the claims." <u>Fantini v. Salem State Coll.</u>, 557 F.3d 22, 26 (1st Cir. 2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 556 (2007)).

When considering a motion to dismiss under Rule 12(b)(6), a trial court must "assume the truth of all well-plead facts and give the plaintiff[s] the benefit of all reasonable inferences therefrom." <u>Vernet v. Serrano-Torres</u>, 566 F.3d 254, 258 (1st Cir. 2009) (quoting <u>Ruiz v. Bally Total Fitness Holding Corp.</u>, 496 F.3d 1, 5 (1st Cir. 2007)).  However, the court need not credit "bald assertions, periphrastic circumlocutions, unsubstantiated conclusions, . . . outright vituperation or subjective characterizations, optimistic predictions, or problematic suppositions." <u>Fantini</u>, 557 F.3d at 26 (citations and internal quotation marks omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." <u>Sutliffe v. Epping Sch. Dist.</u>, 584 F.3d 314, 325 (1st Cir. 2009) (quoting <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949 (2009)).  On the other hand, a Rule

12(b)(6) motion should be granted if "the facts, evaluated in [a] plaintiff-friendly manner, [do not] contain enough meat to support a reasonable expectation that an actionable claim may exist." Andrew Robinson Int'l, Inc. v. Hartford Fire Ins. Co., 547 F.3d 48, 51 (1st Cir. 2008) (citations omitted).


## Background

While the parties to this case share a long, complex, and sometimes acrimonious history, the factual bases for defendants' counterclaims are relatively straightforward.

For over eighteen years, Young & Novis Professional Association ("Young & Novis") provided pathology services to the hospital under a series of contracts.  The hospital decided not to renew its most recent contract with Young & Novis, so it expired on February 28, 2010.  At all times relevant to this complaint, defendants Cheryl Moore, M.D., and Glenn Littell, M.D., owned and were employees of Young & Novis.  Dr. Moore also served as Medical Director of the hospital's laboratory, which included the Pathology Department, and Dr. Littell was a member of the hospital's medical staff.

A. The College of American Pathologists Probation Decision

     In late 2009 or early 2010, Drs. Moore and Littell filed
complaints against the hospital with various public and private
regulatory and accrediting agencies, including the College of
American Pathologists ("College").[1]  Before the doctors filed
their complaints, the hospital attempted to manage the pathology
laboratory in a way that excluded Dr. Moore, over the express
objections of Drs. Moore and Littell.  The hospital's attempt to
assume management of the pathology laboratory was one reason for
the complaint Drs. Moore and Littell made to the College of
American Pathologists.  The College is an accrediting body that
in effect certifies the proper operation of pathology
laboratories according to professional standards, one of which
requires direct supervision by a qualified Laboratory Director.
During the College's subsequent investigation of the doctors'
complaint, the hospital dealt with and responded directly to the
College, "to the intentional exclusion of Dr. Moore."  (First Am.
Answer (document no. 42) ¶ 98.)


     Defendants' false-light invasion of privacy claim is based
upon the hospital's public reporting of the initial results of
the College's inquiry.  On February 17, 2010, hospital CEO

---

     [1] The exact date of the complaint is not disclosed in the
counterclaim, but is not material to any matter before the court.

Gregory Walker sent an e-mail to all hospital employees and
medical staff — an e-mail reprinted in the <u>WDH Beacon</u>, a hospital
newsletter.  That e-mail stated, in pertinent part:

> On Friday, February 12, 2010, the Hospital received a
> letter from the College of American Pathologists (CAP)
> regarding the findings related to a complaint filed by
> the pathologists involved in a contract dispute with
> the hospital.  The accrediting agency placed Wentworth-
> Douglass Hospital's lab on probation <u>citing</u> <u>a</u> <u>failure</u>
> <u>on</u> <u>the</u> <u>part</u> <u>of</u> <u>Pathologist</u> <u>Dr.</u> <u>Cheryl</u> <u>Moore</u>, the
> Laboratory Director, <u>to</u> <u>provide</u> <u>proper</u> <u>oversight</u> <u>of</u>
> <u>laboratory</u> <u>practices</u>.  The hospital is seeking
> additional information <u>about</u> <u>specific</u> <u>deficiencies</u> <u>on</u>
> <u>the</u> <u>part</u> <u>of</u> <u>Dr.</u> <u>Moore</u> and will make a determination
> regarding how to proceed once the additional
> information is received.  The CAP determination is
> based on an assessment of the oversight
> (administrative) activities.  There were no findings
> related to the quality of services provided.
> Wentworth-Douglass Hospital is confident that it will
> satisfactorily address the recent concerns raised by
> CAP.
>
> Several governmental and accrediting agencies,
> including [the] NH Attorney General, the Department of
> Health and Human Services, the Centers for Medicaid and
> Medicare Services and The Joint Commission have already
> completed their investigations and found no
> deficiencies.

(Pl.'s Mot. to Dismiss, Ex. 5 (document no. 44-6), at 2.)  Also,
on February 17, <u>Foster's Daily Democrat</u> ran an article that
included the following relevant passages:

> Wentworth-Douglass Hospital's pathology lab has been
> put on probation by an accrediting agency <u>due to the</u>
> <u>failure of a pathologist</u> in a feud with the hospital <u>to</u>
> <u>"provide proper oversight of laboratory practices,"</u> the
> hospital disclosed Tuesday.

The College of American Pathologists informed the
hospital on Friday of the action, which followed a
complaint to the agency filed by Dr. Cheryl Moore, the
lab director, and her partner, Dr. Glenn Littell,
according to WDH spokeswoman Noreen Biehl.

The pathologists have alleged their contract wasn't
renewed after several years because they pushed the
administration against its will to report a 13-month
patient privacy breach to authorities and patients –
allegations that have been rebuffed by WDH.

"The hospital is seeking additional information about
specific deficiencies on the part of Dr. Moore and will
make a determination regarding how to proceed once the
additional information is received," Biehl said.  "The
CAP determination is based on an assessment of the
oversight (administrative) activities.  There were no
findings related to the quality of services provided.
Wentworth-Douglass Hospital is confident that it will
satisfactorily address the recent concerns raised by
CAP."

Moore did not return a message left for her Tuesday
night.

(Id., Ex. 2 (document no. 44-3), at 2; emphasis supplied.)  While

defendants did not attach Walker's e-mail, the WDH Beacon

article, or the Foster's Daily Democrat article to their answer

and counterclaim, the parties agree that it is appropriate for

the court to treat those three documents as having been

incorporated into defendants' complaint and to consider them when

ruling on plaintiff's motion to dismiss.


The hospital also submitted the February 10, 2010, letter

from the College announcing that it had placed the hospital's

laboratory on probation.[2]  The hospital contends that it is
appropriate for the court to consider the letter.  Defendants did
not include that letter in the list of documents they deem to be
"absolutely central" to their counterclaims (and, thus,
appropriate for consideration at this point),[3] but, on the other
hand, they quote the letter several times in their objection to
the hospital's motion to dismiss, and it is quoted as well in the
documents they did file.

Both parties agree on the legal standard applicable in
determining whether the court may consider the College's letter.
"Under Rule 12(b)(6), the district court may properly consider
only facts and documents that are part of or incorporated into
the complaint; if matters outside the pleadings are considered,
the motion must be decided under the more stringent standards
applicable to a Rule 56 motion for summary judgment."  Trans-Spec
Truck Serv., Inc. v. Caterpillar Inc., 524 F.3d 315, 321 (1st
Cir. 2008) (citing Garita Hotel Ltd. P'ship v. Ponce Fed. Bank,
F.S.B., 958 F.2d 15, 18 (1st Cir. 1992)).  However, "[w]hen . . .

---

[2] That letter was addressed to Dr. Moore and copied to
various others, including the hospital's CEO.

[3] That list includes Walker's e-mail, the WDH Beacon
article, and the Foster's Daily Democrat article, all dated
February 17, 2010, plus another Foster's Daily Democrat article,
dated May 13, 2010, which relates to defendants' defamation
claim.

a complaint's factual allegations are expressly linked to – and admittedly dependent upon – a document (the authenticity of which is not challenged), that document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6)." Trans-Spec, 524 F.3d at 321 (quoting Beddall v. State St. Bank & Trust Co., 137 F.3d 12, 16-17 (1st Cir. 1998); citing Clorox Co. P.R. v. Proctor & Gamble Comm. Co., 228 F.3d 24, 32 (1st Cir. 2000)).

To determine whether the College's letter should be treated as if it were incorporated into defendants' pleading, it is necessary to closely examine defendants' false-light claim. That claim asserts, in pertinent part:

> In addition to other false and misleading representations, Plaintiff represented to the public that the Individual Defendants [i.e., Moore and Littell] were responsible for the CAP placing Plaintiff's pathology lab on probation. In particular, the Plaintiff misrepresented that CAP had cited Dr. Moore [as being] personally responsible for "failure" to provide "proper oversight of laboratory practices," and that she was personally responsible for "specific deficiencies."

(First Am. Answer ¶ 98.) Given that defendants' false-light claim is based on allegations that the hospital misrepresented what the College actually said about Dr. Moore, and given defendants' own reliance on that letter in their objection to the hospital's motion to dismiss, the court concludes that

9

defendants' false light claim is linked to and dependent upon the letter.  Accordingly, the court will consider it in resolving the hospital's motion to dismiss.  See Fudge v. Penthouse Int'l, Ltd., 840 F.2d 1012, 1015 (1st Cir. 1988) (affirming trial court's decision, when ruling on motion to dismiss, to consider document that was "absolutely central" to plaintiffs' complaint and that plaintiffs would need to introduce at trial to prove their case).

The February 10 letter from the College stated, in pertinent part:

> This letter serves as notice that on February 9, 2010, the Accreditation Committee of the College of American Pathologists' Laboratory Accreditation Programs placed the accreditation of Wentworth-Douglass Hospital Main Clinical Laboratory on Probation.  . . .  This decision is based on the laboratory's failure to demonstrate compliance with Standard I, as identified during a complaint investigation (Cx#3902).
>
> Standard I requires the Laboratory Director to assume professional, scientific, consultative, organizational, administrative and educational responsibilities for the services provided.
>
> The Accreditation Committee is especially concerned about the documentation submitted both by the Laboratory Director and Senior Vice President of Operations indicating a lack of oversight by the Laboratory Director involving laboratory practices.
>
> As a condition of continued accreditation and in order to allow the Committee to assess compliance with Standard I, the laboratory must:

- Submit <u>documentation that demonstrates that the</u> <u>Laboratory Director</u> <u>is</u> <u>actively</u> <u>providing</u> <u>oversight</u> to the activities of the laboratory as detailed in Standard I.

(Pl.'s Mot. to Dismiss, Ex. 1 (document no. 44-2), at 2; emphasis added.)

## B. The Hospital's Statement Regarding Theft

The hospital initiated suit against defendants in a complaint dated March 29, 2010.  In Count I of the complaint, the hospital alleged a violation of the federal Computer Fraud and Abuse Act ("CFAA"):

> Defendants intentionally accessed computers without authorization or exceeded authorized access, and thereby obtained information from a protected computer in that Defendants, without the prior authorization and approval of the WDH Information Systems Department and in violation of IM-09, connected removable storage devices or external hardware to PY001, PY002 and the HP laptop computer, and obtained or altered information from WDH computers owned by WDH that Defendants were not entitled to obtain or alter.

(Compl. (document no. 1) ¶ 72.)  An article in the May 13, 2010, edition of <u>Foster's Daily Democrat</u> described the hospital's complaint:

> In late March, WDH filed suit against Moore and Littell in U.S. District Court saying they violated the Computer Fraud and Abuse Act and hospital policy by attaching storage devices to two computers and a laptop owned by the hospital between Feb. 1 and Feb. 28.

11

> The hospital alleged that on the last day the doctors
> had access to the computers, "extraordinarily large
> removable storage devices were attached" to the
> computers without approval of the hospital's
> information systems department, and electronic data was
> downloaded from the WDH computer network, according to
> the suit.
>
> WDH spokeswoman Noreen Biehl recently said the doctors
> returned the electronic data, <u>which she described as
> being stolen from the hospital</u>.  The case is ongoing.

(Pl.'s Mot. to Dismiss, Ex. 6 (document no. 44-7), at 3 (emphasis
added).)

Defendants assert that "Plaintiff's representative or
representatives made a statement or statements to FOSTER'S DAILY
DEMOCRAT and/or other persons that the Defendants had committed
criminal theft, which statement or statements FOSTER'S DAILY
DEMOCRAT then published on or about May 13, 2010."  (First Am.
Answer ¶ 105.)

**Discussion**

A. Invasion of Privacy (False Light)

Defendants Moore and Littell assert that the hospital made
false and misleading representations concerning them when it
"represented to the public that [they] were responsible for the
[College] placing Plaintiff's pathology lab on probation" — in
Walker's February 17, 2010, e-mail to hospital staff members, in
the article in the February 17 WDH Beacon, and in statements

attributable to hospital officials reported in the February 17 article in <u>Foster's Daily Democrat</u>.  (First Am. Answer ¶ 98.) More specifically, defendants complain that "the [hospital] misrepresented that [the College] had cited Dr. Moore [as being] personally responsible for 'failure' to provide 'proper oversight of laboratory practices,' and that she was personally responsible for 'specific deficiencies.'" (<u>Id.</u>)

While defendants generally identify three publications that included statements that allegedly placed them in a false light, they do not identify with precision just what allegedly misleading statements support the claim.  Reading the identified documents in the light most favorable to defendants, <u>see</u> <u>Vernet</u>, 566 F.3d at 258, the offending statements in the e-mail and the <u>WDH Beacon</u> article appear to be those comments that, taken together and in context, are capable of conveying to the ordinary reader an objectionable, highly offensive, meaning.  That is, a plain implication or innuendo to the effect that Dr. Moore performed her professional responsibilities as Laboratory Director in a deficient manner, failing to provide proper administrative oversight of laboratory practices to a substantial degree, resulting in imposition of a probationary sanction by an accrediting agency, pending correction of the deficient condition.

The hospital moves to dismiss Moore's false-light claim on grounds that she has not identified any statement published by the hospital that was not true, and, that the statements on which she bases her claim did not create a misleading impression that placed her in a false light.  It moves to dismiss Dr. Littell's false-light claim on grounds that defendants have identified no actionable statements "of and concerning" Littell.

The New Hampshire Supreme Court has "not yet addressed whether the tort of invasion of privacy – false light is recognized in New Hampshire."  Thomas v. Tel. Publ'g Co., 151 N.H. 435, 440 (2004) (citing Hamberger v. Eastman, 106 N.H. 107 (1964)).  Both parties, however, agree that defendants' claim is recognized by Section 652E of the Restatement (Second) of Torts (1977).  The New Hampshire Supreme Court often looks to the Restatement in developing the common law of New Hampshire, and this court will proceed on the likelihood that it would substantially adopt the Restatement's provisions in describing the tort under New Hampshire's common law.  See Howard v. Antilla, 294 F.3d 244, (1st Cir. 2002) (applying Section 652E to false-light claim in a diversity case from New Hampshire).

The Restatement describes the tort of "Publicity Placing a Person in False Light" in the following way:

14

> One who gives publicity to a matter concerning another
> that places the other before the public in a false
> light is subject to liability to the other for invasion
> of his privacy, if
>
>    (a) the false light in which the other was placed
> would be highly offensive to a reasonable person, and
>
>    (b) the actor had knowledge of or acted in
> reckless disregard as to the falsity of the publicized
> matter and the false light in which the other would be
> placed.

Restatement (Second) of Torts § 652E.  While, as noted, the tort

of false-light invasion of privacy has yet to be formally

recognized under New Hampshire's common law, the state's highest

court has recognized that such a claim "requires falsity or

fiction." Hamberger, 106 N.H. at 111 (citing William L. Prosser,

Torts § 112, at 842-43 (3d ed. 1964); see also Restatement

(Second) of Torts § 652A cmt. a ("it is essential to the rule

stated in this Section that the matter published concerning the

plaintiff is not true"); Dan B. Dobbs, The Law of Torts § 428, at

1208 (2001) ("the objectionable false light is not necessarily a

defamatory one, only false and offensive one"); Stuart M. Speiser

et al., The American Law of Torts § 30:30, at 971 (1991) ("the

statement must be untrue").


    Defendants' false-light claim, properly understood, asserts

that the hospital's public comments relative to the College's

imposition of a probationary sanction are reasonably capable of

15

implying a highly objectionable, and false, statement about Dr.
Moore — i.e., that she was professionally deficient in carrying
out her responsibilities as Laboratory Director, to the point
that a respected accrediting agency placed the laboratory on
probationary status, and, that other deficiencies in her
professional performance might soon be discovered.

Defendants also assert that the hospital knew that the
representations it made in the Walker e-mail, the <u>WDH Beacon</u>, and
<u>Foster's Daily Democrat</u> were false and misleading because

> the [hospital] knew that it had actively undermined Dr.
> Moore's oversight of the pathology lab by attempting to
> manage the lab through its employee, Gint Taoras, to
> the exclusion of Dr. Moore and Dr. Littell, over the
> repeated objections of Dr. Moore and Dr. Littell, and
> by responding to CAP's inquiries directly and to the
> intentional exclusion of Dr. Moore; and because the
> Plaintiff knew that its efforts to undermine the
> Defendants' efforts to manage the lab were the basis of
> the Defendants' complaint to CAP.

(First Am. Answer ¶ 98.)

Generally (and New Hampshire law is likely to be
consistent), "the court should make the threshold determination
of whether a statement is capable of implying the objectionable
association of which the plaintiff complains." <u>Fudge</u>, 840 F.2d
at 1018. Here, it is arguable that the hospital's comments
characterizing the College's action were not strictly accurate,

and, taken in context, are capable of conveying the message that
Dr. Moore was professionally deficient in failing to provide the
required oversight of laboratory processes.  Such a public
criticism, if false, might well be found to have put Dr. Moore in
a highly offensive light.  The complaint also alleges facts and
circumstances supporting the claim, i.e., that the implication
was false, and that the hospital either knew it was false or
acted in reckless disregard of its falsity (given that the
hospital allegedly intentionally interfered with Dr. Moore's
ability to provide the necessary oversight).  On the other hand,
the facts, when fully developed, may well point to administrative
deficiencies on Dr. Moore's part that led to the probationary
sanction.

     More to the point, perhaps, it cannot be said, on this
record, that the hospital's comments were, as a matter of law,
not false, or did not place Dr. Moore in a highly offensive
light.  The College's letter did not directly ascribe blame for
the apparent lack of administrative oversight by the Laboratory
Director, and seemingly took pains to communicate "concern" about
"the documentation submitted both by [Moore] and [the hospital]
indicating a lack of oversight by the Laboratory Director."
(Emphasis added.)  Why there appeared to be a lack of oversight
by the Laboratory Director was simply not addressed by the

17

College.  The letter could reasonably be construed to imply that the cause (or "fault") was with Dr. Moore — after all, she was the Laboratory Director duty bound to provide oversight.  The difference between what the College literally wrote, and what the hospital attributed to the College, however, is sufficiently marked that, depending on the facts developed, a reasonable jury could sustainably find that the hospital's statements about Dr. Moore were false.  But, a fact-finder might also plausibly read the College's letter and the hospital's statement as entirely consistent — the difference in words used being explained as a difference in the degree of professional courtesy exhibited.

If the hospital's statements are found to be false, those statements could also be found to be highly offensive to a reasonable person, as they quite directly call into question Dr. Moore's professional performance of her duties.  And, it cannot be said on this undeveloped record that the hospital did not know of, or did not act with reckless disregard for, the alleged falsity of the publicized matter, or the alleged false light in which Dr. Moore would be placed.  The complaint makes that allegation, and it alleges some supporting facts, all of which must be taken as true for purposes of ruling on a motion to dismiss.

18

With respect to Dr. Littel, however, it is clear that the hospital's statements were not capable of placing him in an actionable false light, either directly or by implication. Nothing was said about Dr. Littel, and certainly nothing false or offensive.  The hospital's alleged comments were limited to the College's action, which was based upon a perceived lack of oversight by Dr. Moore, the Laboratory Director.  Those statements did not reflect upon Dr. Littel's professionalism.

Accordingly, the hospital's motion to dismiss Dr. Moore's false light claim is necessarily denied at this stage given that the complaint adequately asserts a claim for false light invasion of privacy; the motion to dismiss Dr. Littel's false light claim, however, is granted.

B. Defamation

All three defendants claim that plaintiff defamed them when a hospital employee, speaking to a Foster's Daily Democrat reporter, told the reporter "that the Defendants had committed criminal theft."  (First Am. Answer ¶ 105.)  The hospital says the defamation claim should be dismissed, because the statement is not capable of defamatory meaning and is substantially true. Defendants disagree, categorically.

19

In New Hampshire, a "plaintiff proves defamation by showing
that the defendant failed to exercise reasonable care in
publishing a false and defamatory statement of fact about the
plaintiff to a third party, assuming no valid privilege applies
to the communication." Thomas v. Tel. Publ'g Co., 155 N.H. 314,
321 (2007) (quoting Pierson v. Hubbard, 147 N.H. 760, 763
(2002)). "To be defamatory, language must tend to lower the
plaintiff in the esteem of any substantial and respectable group,
even though it may be quite a small minority." Touma v. St.
Mary's Bank, 142 N.H. 762, 765 (1998) (quoting Duchesnaye v.
Munro Enters., Inc., 125 N.H. 244, 252 (1984)). Moreover:

> The defamatory meaning must be one that could be
> ascribed to the words by "hearers of common and
> reasonable understanding." Jones v. Walsh, 107 N.H.
> 379, 381 (1966). An action in libel cannot be
> maintained on an artificial, unreasonable, or tortured
> construction imposed upon innocent words, nor when only
> "supersensitive persons, with morbid imaginations"
> would consider the words defamatory. Lambert v.
> Providence Journal Co., 508 F.2d 656, 659 [(1st Cir.
> 1975)] (citations omitted). "No mere claim of the
> plaintiff can add a defamatory meaning where none is
> apparent from the publication itself." W. PROSSER,
> [Torts § 111, at] 749 [(4th ed. 1971)]. See also 53
> C.J.S. Libel and Slander § 162(b), at 250-51 (1948).

Thomson v. Cash, 119 N.H. 371, 373 (1979) (parallel citations and
subsequent history omitted). Finally, "[w]hether a given
statement can be read as being . . . an actionable statement of
fact is itself a question of law to be determined by the trial
court in the first instance, considering the context of the

20

publication as a whole." Nash v. Keene Publ'g Corp., 127 N.H. 214, 219 (1985) (citing Pease v. Tel. Publ'g Co., 121 N.H. 62, 65 (1981); Morrissette v. Cowette, 122 N.H. 731, 733 (1982)).

As with defendants' false-light claim, it is first necessary to identify the allegedly defamatory statement.  In their counterclaim, defendants assert that "[The hospital's] representative or representatives made a statement or statements . . . that the Defendants had committed criminal theft, which statement or statements Foster's Daily Democrat then published on or about May 13, 2010."  (First Am. Answer ¶ 105.)

In the referenced article, after describing the hospital's civil claim under the CFAA, the newspaper reported that: "WDH spokeswoman Noreen Biehl recently said the doctors returned the electronic data which she described as being stolen from the hospital."  (Pl.'s Mot. to Dismiss, Ex. 6, at 2.)  While the article's lack of direct attribution (the absence of quotation marks around the offending phrase) leaves some question as to whether the words on which defendants base their claim are Biehl's words or the reporter's words, the court will proceed on the assumption that defendants are claiming that Biehl said, in substance, to the Foster's Daily Democrat reporter: "Drs. Moore

and Littell returned the electronic data they stole from the
hospital."

While defendants may construe that statement a bit too
broadly, in that Biehl is not reported as having said anything
one way or the other about defendants' criminal liability, see
Fantini, 557 F.3d at 26, the statement is, nonetheless, capable
of a defamatory meaning.  A statement to the effect that Drs.
Moore and Littell returned data that had been stolen from the
hospital is capable of fairly implying to a reasonable listener
that the doctors did, indeed, steal the data from the hospital.
Cf. Nash, 127 N.H. at 219 (explaining that a statement of opinion
is not actionable as defamation "unless it may reasonably be
understood to imply the existence of defamatory fact as the basis
for the opinion").  When a person says that another person stole
something, the accusation, if believed, would "tend to lower the
[accused thief] in the esteem of any substantial and respectable
group," Touma, 142 N.H. at 765, even when the accusation is
silent on the question of eventual criminal liability.

Plaintiff's second argument – that it cannot be liable for
defamation because Biehl's statement is true – is a non-starter.
It is true that, under New Hampshire's common law, "substantial
truth is a defense to a libel or defamation claim."  Thomas, 155

22

N.H. at 335.   Thus, if it were undisputed that Drs. Moore and
Littell stole the hospital's data (i.e., took the data without
authorization) then the hospital would be entitled to dismissal
of defendants' defamation claim.   But, it is hardly undisputed
that defendants took the hospital's data without authorization;
that is precisely what is at issue in Counts I and IV of the
hospital's complaint.   The hospital says defendants took
electronic data from its computers in violation of both the CFAA
(Count I) and the common law of New Hampshire (Count IV).
Defendants deny those claims.   Those claims remain unresolved.[4]
This is not one of those rare cases in which a defamation claim
can be "dismissed on the rationale that the statements complained
of are substantially true."   Id. (quoting 53 C.J.S. Libel and
Slander; Injurious Falsehood § 164 (2005)).


## Conclusion

     For the reasons given, the hospital's motion to dismiss
defendants' counterclaims (document no. 44) is granted in part

---

[4] Because the hospital's CFAA and conversion claims have yet
to be resolved, this case stands on a different footing from
Russin v. Wesson, 949 A.2d 1019 (Vt. 2008), on which plaintiff
relies.   In that case, the court held that where the plaintiff
was awarded judgment on a conversion claim against the defendant,
the trial court erred in entering judgment for the defendant on a
counterclaim for defamation based upon the plaintiff's statement
that the defendant was a thief.   See id. at 306.   Here, by
contrast, there is neither a judicial determination nor an
admission that defendants took the hospital's electronic data
without authorization.   For that reason, Russin is inapplicable.

and denied in part.  The motion is granted with respect to

Dr. Littel's false light claim.  It is denied with respect to

Dr. Moore's false-light claim, and denied with respect to the

defamation claim.


**SO ORDERED.**

Steven J. McAuliffe
Chief Judge

February 4, 2011

cc:  William E. Christie, Esq.
     Charles W. Grau, Esq.

24